Pfeifer, J.,
dissenting.
{¶ 40} Was patient R.B.’s death the result of the failure of Beverly Clayton or a larger, systemic failure at Mercy Hospital Western Hills (“Mercy Hospital”)? It is easy to blame the nurse: she made mistakes. But Clayton lost the opportunity at her hearing to demonstrate effectively that her own mistakes were the natural result of a failure of process at Mercy Hospital. I would hold that the hearing officer erred in quashing Clayton’s subpoena for records of other patients in the intensive-care unit (“ICU”) on the night of R.B.’s death and that that error was prejudicial. Accordingly, I dissent.
{¶ 41} The court below and the majority suggest that Clayton had other ways besides patient records to demonstrate that she was in the midst of a chaotic situation during the evening on which R.B. was admitted to the ICU. But why should she be limited to inferior evidence? The nurses working with her on the evening in question were inexperienced and needed Clayton’s assistance. Clayton testified at her hearing that they had difficulty even starting IVs. Do the recollections of inexperienced co-workers, who may be called against their will to testify about their own incompetence over two years after the night in question, provide the same quality of evidence as medical records, which can describe with clinical detachment exactly what happened on the ICU floor that night? In the hearing, Clayton’s expert witness, Terence Gallagher, described the difficulty of definitively detailing the exact events involved in Clayton’s case without a written record:
I believe that it was an absolutely insane night the entire night. However, without the other documentation that we requested, we don’t have anything that says we had to run over here. There’s another rapid response; here’s another admission; here’s another admission; here’s another admission. I believe that kind of thing went on that entire time.
[[Image here]]
*124 I’m referring to Beverly having to run from room to room to room putting out fires because this person is having trouble doing this and that person is having trouble doing that, and/or the supervisor’s on the phone sending me another admission when I have no nurses to accept transfer of care for that admission.
{¶ 42} Contemporaneous written records would present a full picture of the situation in the ICU; documentary evidence could demonstrate that Clayton’s depiction of the ICU as unusually chaotic on that evening was not just common workplace bluster but was objectively true.
{¶ 43} Did Clayton not do enough for R.B. because she was asked to do too much for others? Clayton was called upon to administer medications, interact with the patient, monitor vital signs, and make the medical determination whether the patient needed to be seen by a physician. Multiply that by the seven or eight other patients that Clayton claims were in the ICU that evening and under her direct care or indirect care as the nurse in charge of the other nurses on that shift. Some of those patients certainly had a better chance for survival than R.B., who, along with his family, requested that no extraordinary means of resuscitation be employed. Did hospital priorities affect Clayton’s care of R.B.? Wouldn’t it be best for every patient if the nursing board could determine whether nurses were being systematically overextended?
{¶ 44} Beverly Clayton lost her license to perform her profession for at least a year. That is a crushing sanction, and the suspension carries a taint that will last forever. I would hold that a person fighting to maintain her right to practice her profession is entitled to fairly wide latitude in seeking documentary evidence to support her defense, especially given the requirement in R.C. 119.09 that “the agency * * * upon the request of any party * * * shall[ ] issue * * *a subpoena duces tecum to compel the production of any * * * records.” The records Clayton sought were directly related to her job performance on the night in question. The hearing officer was too restrictive in this case, and that prejudiced Clayton. I would remand the cause for a new hearing.
O’Donnell, J., concurs in the foregoing opinion.